**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTOINE BLACK,** | : | **Civil No.  1:14-CV-965** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CITY OF HARRISBURG, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

## I.    Statement of Facts and of the Case

In this case we are asked to consider the second iteration of a complaint filed by the plaintiff, a state prisoner who is proceeding *pro se.*  In considering this second complaint we do not write upon a blank slate.  Quite the contrary, we examine this matter against the backdrop of Black's prior, counseled civil complaint in <u>Black v. Harrisburg</u>, Civil No. 1:11-CV-1912, a complaint that was dismissed by this Court for failure to state a claim upon which relief may be granted.

Both of these civil actions arise out of the same nucleus of operative facts, and both civil actions bring the same essential legal claims against a similar array of

1

defendants.   Thus, in both lawsuits Black alleges that on August 17, 2010, a

Harrisburg Police detective, Donald Heffner, obtained a search warrant for evidence

relating to an investigation of stolen property.   Executing that state search warrant

police seized approximately $42,390, which was placed into evidence.   Of this

$42,390 in seized currency, $28,980 was subsequently returned to Black after he

objected to forfeiture proceedings commenced by the district attorney.   Black's

complaint alleges that the remaining moneys were then the subject of a state replevin

action brought by the plaintiff, although he does not describe the status or outcome

of that state action.

On these basis of these averments, Black first brought a civil action against the

City of Harrisburg, the Harrisburg Police Department, Detective Heffner, and

unknown police officers in 2011.   Black v. Harrisburg, Civil No. 1:11-CV-1912.

That action was dismissed by the district court on December 12, 2013, in a

memorandum opinion which explained that Black's pleadings failed to state a claim

for municipal civil rights liability against the City of Harrisburg.  Black v. Harrisburg,

Civil No. 1:11-CV-1912 (Doc. 37.)  In its opinion, the district court also found that

Detective Heffner had probable cause to initially seize this currency as part of his

criminal investigation, and observed that it appeared that Black's due process rights

were protected through the state legal processes utilized by Black to seek recovery

2

of these funds.  (Id.)  Having made these legal determinations, the court dismissed Black's complaint.  (Id.)  The district court initially dismissed this action while providing Black with leave to amend his pleadings.  (Id.)  However, when Black neglected to timely amend the complaint this action was dismissed with prejudice on February 11, 2014.  Black v. Harrisburg, Civil No. 1:11-CV-1912 (Doc. 39.)

Three months then elapsed before Black filed this civil action on May 20, 2014. (Doc. 1.) Black's latest, and belated, complaint, reprises the claims previously found to be legally inadequate in Black v. Harrisburg, Civil No. 1:11-CV-1912, and names the same defendants who were previously dismissed in that prior lawsuit–the City of Harrisburg, the Harrisburg Police Department and Detective Heffner.  Thus, in our comparison of the two complaints we can discern no substantive changes in the latest pleadings which correct or address the fundamental legal flaws identified by the district court in Black's prior complaint.

Along with this latest complaint Black has filed a motion for leave to proceed in forma pauperis.  (Doc. 3.)  For the reasons set forth below, we will GRANT the motion for leave to proceed in forma pauperis, but recommend that this complaint be dismissed.

## II.    Discussion

### A.    Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se*

complaints filed by prisoners who seek leave to proceed *in forma pauperis* which

seek redress against government officials.  Specifically, we are obliged to review the

complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or,
> in any event, as soon as practicable after docketing, a complaint in a
> civil action in which a prisoner seeks redress from a governmental entity
> or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify
> cognizable claims or dismiss the complaint, or any portion of the
> complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may
> be  granted; or

> (2) seeks monetary relief from a defendant who is immune from such
> relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails

to state a claim upon which relief may be granted."  This statutory text mirrors the

language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).

4

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead

to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.   Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' <u>Id.</u> at 1950.   Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629

F.3d 121, 130 (3d Cir. 2010).

Judged against these guideposts, in this case dismissal of this complaint is

warranted because Black's latest pleading fails on a number of scores to meet the

substantive standards required by law, in that it does not set forth a "short and plain"

statement of a cognizable violation of some right guaranteed by the Constitution or

laws of the United States.   The flaws in the *pro se* complaint lodged by Black are

discussed separately below.

## B.   To the Extent That Black Seeks to Re-litigate Claims That Were Previously Dismissed, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters

At the outset, Black's latest complaint appears to attempt to re-litigate a matter

which has previously been dismissed by this Court.   In conducting an initial screening

assessment of this aspect of Black's complaint:   " We have the authority to apply the

doctrine of claim preclusion or *res judicata sua sponte.*   <u>Gleash v. Yuswak</u>, 308 F.3d

758, 760 (7th Cir.2002); <u>Ezekoye v. Ocwen Federal Bank FSB</u>, 179 F.App'x 111, 114

(3d Cir.2006) (non precedential). [and] can . . .  invoke *res judicata* 'if it is so plain

from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' <u>Gleash</u>, 308 F.3d at 760." <u>Guider v. Mauer</u>, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009).  In our view, upon a preliminary screening review of this, Black's latest lawsuit, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the matters previously dismissed by this Court.

Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation.  It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now  . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir.1988).  Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' <u>Melikian v. Corradetti</u>, 791 F.2d 274, 277 (3d Cir.1986)." <u>Electro-Miniatures Corp. v. Wendon Co., Inc</u>. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co.

v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made by Black in the instant complaint the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, as a threshold matter, these claims should be dismissed on *res judicata* and issue preclusion grounds.

However, in any event the claims brought by Black in this latest lawsuit continue to fail on their merits. These legally flawed claims are discussed separately below.

## C.    The Police Department is Not a Proper Institutional Defendant

For example, we note that the Harrisburg Police Department is not be a proper institutional defendant in this §1983 action since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any

liability must flow to the police department.  Indeed, it has been repeatedly held that a police department is not a "person" for purposes of § 1983 and, therefore, is not a proper defendant in a § 1983 action.  Blackwell v. Middletown Borough Police Dep't, 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012), citing Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29–30 (M.D.Pa.2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5–6 (M.D.Pa.2007) (explaining that police department not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F.Supp.2d 504, 507 (E.D.Pa.2001) (city police department is a sub-unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes of suit; Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D.Pa. Dec.20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v. Westtown–East Goshen Police Dept., No. Civ.A. 98–3919, 1999 WL 236565, 1999 U.S. Dist. LEXIS 5551, at *4 (E.D.Pa. Apr.22, 1999) (citing Johnson v. City of Erie, 834 F.Supp. 873, 878–79 (W.D.Pa.1993) and Agresta v. City of Philadelphia, 694 F.Supp. 117, 119 (E.D.Pa.1988)); Johnson v. City of Erie, Pa., 834 F.Supp. 873, 879

(W. D.Pa.1993).  In light of this consistent case law rejecting efforts to name local departments as institutional defendants in §1983 actions, it is recommended that Black's claims against this institutional defendant be dismissed.

### D.   Black Has Failed to State a Municipal Liability Claim

Further, to the extent that Black persists in seeking to hold the City of Harrisburg liable for alleged civil rights violations, he continues to fail to meet the exacting burden of pleading and proof necessary to assert such a municipal liability claim.  It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law."  Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or

edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).  The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted).  Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality.  However, failure-to-train claims also must meet precise and demanding legal criteria.  Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police

come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has reaffirmed the exacting guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers.  In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  Monell, 436 U.S., at 691.  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell ").  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular

omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id. (some citations deleted).

Here, this complaint simply does not make sufficient allegations which would permit a finding of institutional liability against the City of Harrisburg, a legal flaw that was previously identified for Black in the order dismissing his prior complaint. With respect to these institutional liability claims, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Fairly construed, Black's latest pleadings amount to little more than a formulaic recitation of the elements of a cause of action, a form of pleading that will not do. Therefore, Black's claims against this institutional defendant also fail as a matter of law.

### E.   Black May Not Bring Damages Claims Under the Pennsylvania Constitution

Further, to the extent that the plaintiff seeks damages under the Pennsylvania constitution, it must be noted that:

Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation. Moreover, the question of whether the

Pennsylvania Constitution provides a cause of action for damages remains unanswered.  Underwood v. Beaver Cnty. C.Y.S., Civ. A. No. 03-1475, 2005 U.S. Dist. LEXIS 23012, at *7 (W.D.Pa. Oct. 7, 2005). Nevertheless, a majority of other district courts in this circuit that have decided the issue have concluded that money damages are not available for claims under the Pennsylvania Constitution.  See Ryan v. General Machine Prods., 227 F.Supp.2d 585, 595 (E.D.Pa.2003) (stating that federal courts in the Court of Appeals for the Third Circuit have concluded that there is no right to money damages under the Pennsylvania Constitution); see also Douris v. Schweiker, 229 F.Supp.2d 391, 405 (E.D.Pa.2002); Lees v. West Greene Sch. Dist., 632 F.Supp. 1327, 1335 (W.D.Pa.1986).   Although monetary relief is unavailable, "other remedies, such as declaratory or injunctive relief ... are ... remedies under the Pennsylvania Constitution." Jones v. City of Philadelphia, 890 A.2d 1188, 1215-16 (Pa.Commw.Ct.2006) (discussing the lack of a cause of action for damages under the Pennsylvania Constitution and declining, "without benefit of legislative action," to create such a cause of action.).

O'Hara v. Hanley, No. 08-1393,  2009 WL 2043490, 9 (W.D.Pa. July 8, 2009).

In sum, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."   Pocono Mtn. Charter School v. Pocono Mtn. School Dist., 442 F.App'x 681, 687 (3d Cir. 2011).  Therefore, the state constitution simply may not provide legal footing for any damages claims like those made by the plaintiff in this case, and this claim should also be dismissed.

### G.   Black's Claims Against Defendant Heffner Continue to Fail As a  Matter of Law

Finally, Black's claims against the individual defendant named in this action, Detective Heffner, continue to fail as a matter of law.

First, we note that, with respect to any Fourth Amendment claim against Detective Heffner arising out of the initial seizure of this currency, the defendant conducted this search pursuant to a search warrant issued by the state court.  As the district court has previously observed defendant Heffner clearly complied with the requirements of the Fourth Amendment by seeking, and obtaining, a warrant.  Black v. Harrisburg, Civil No. 1:11-CV-1912 (Doc. 37.)  Further, the district court has previously noted that the scope of this search was entirely appropriate stating that: "It is well-established that the government may seize evidence of the sale of contraband or stolen goods for use in investigation or at trial.  See Warden v. Hayden, 387 U.S. 294, 301-02 (1967) ('Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband.')."  (Id., p. 11.)  In light of these immutable facts, and legal findings, any Fourth Amendment claim against Detective Heffner is simply unavailing.

Further, the facts recited by Black rebut any Fifth Amendment due process claim that the plaintiff may seek to advance.  In this setting, where we are considering a due process claim relating to the loss of property as a result of some state action, it is well-established that "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process' Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100

(1990)."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  Here, Black's complaint alleges that some of this seized property was returned to him when he objected to a civil forfeiture proceeding, and that the remaining contested property is the subject of a state replevin action.  Thus, Black's pleadings affirmatively disclose that the plaintiff has availed himself of two state legal avenues–a forfeiture proceeding and a replevin action–to recover this property.  Given the presence of these adequate state legal remedies, any due process claim fails.  See, e.g. McKenna v. Portman, 538 F. App'x 221, 224 (3d Cir. 2013)(due process claim fails when Pennsylvania law provides for due process in forfeiture proceedings); Potts v. City Of Philadelphia, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002)(same).

In addition, we note that this complaint should also be dismissed because Detective Heffner is, in our view, entitled to qualified immunity from any liability for damages.[1]  The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability."  Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005).

---

[1]This Ccourt is entitled to address this defense *sua sponte*, when appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand.  Pearson v. Callahan, 555 U.S. 223 (2009). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  This inquiry "must be undertaken in light of the specific context of the case."  Id. at 201.  Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful."  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The court is no longer required to conduct these two inquiries sequentially, and it may forego difficult constitutional issues and confer qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where a court elects to address the

alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").   Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case the gist of Black's claim against Detective Heffner is that the defendant violated his constitutional rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  Under the Fourth Amendment, police typically must secure a search warrant "issued upon probable cause and particularly describing the items

to be seized." Brown v. Muhlenberg, Twp., 269 F.3d 205, 210 (3d Cir. 2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)).  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  A search warrant must also be approved by a neutral magistrate.  Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v. California, 401 U.S. 797, 804 (1971)). Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)).  Accordingly, the evidentiary standard for probable cause is significantly lower than that required for conviction.  Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime).

In this case, the state court found probable cause when it issued this warrant to Detective Heffner.  That finding of probable cause was later reaffirmed by the district court when it dismissed Black's prior civil lawsuit.  While state court probable cause findings do not automatically confer qualified immunity upon the defendants, police

officers like the defendant whose probable cause determinations have been reviewed by the courts are often cloaked with qualified immunity as a matter of law.  See e.g., Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005); Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000); Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997). Indeed, in this setting a plaintiff must meet an exacting standard to defeat a police officer's claim of qualified immunity from damages.  In the face of a judicial finding of probable cause, "a plaintiff may succeed in a § 1983 action for false arrest [only] if the plaintiff shows, by a preponderance of the evidence:  (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"  Wilson v. Russo,  212 F.3d 781, 786-87 (3d Cir. 2000).  Black makes no such showing of a deliberate or reckless disregard of the truth by Detective Heffner in this case, despite having been provided ample opportunity to do so.  Therefore, Detective Heffner is entitled to qualified immunity from damages in this lawsuit, and the plaintiff's claims against Detective Heffner should be dismissed.[2]

---

[2]Finally we note that Black has alleged that this conduct also violated the First and Thirteenth Amendments but has averred absolutely no well-pleaded facts showing that these constitutional provisions were implicated in this case. Therefore, these claims also fail as a matter of law.

Having concluded that this *pro se* complaint is flawed in profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, however, the current complaint fails to state a viable civil rights cause of action against this defendant, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has been provided a full opportunity in his prior, identical lawsuit, to amend his pleadings to state a claim but has chosen not to do so.  On these facts, we conclude that granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore it is recommended that the complaint be dismissed without further leave to amend.

## III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 3.) is GRANTED , but  IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of May, 2014.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge